No. 12,387.

ST. LANDRY COTTON OIL COMPANY VS. E. H. McGEE, PRESIDENT, ET ALS.

It was not intended by the Art. 207 of the Constitution of this State that a mill should be granted exemption from taxation for the production of cotton seed meal, which in fact should be used for food purposes and not as a fertilizer, or contemplated that the assessor or tax collector should be called upon in each case to go into an examination of the *pro rata* actually used for fertilizers or for food purposes.

APPEAL from the Eleventh Judicial District Court for the Parish of St. Landry. *G. L. Dupré, J.*

*Kenneth Baillio* for Plaintiff, Appellee.

*E. B. Dubuisson* for Defendants, Appellants.

Submitted on briefs February 18, 1897.
Opinion handed down March 15, 1897.

---

The opinion of the court was delivered by

NICHOLLS, C. J. The object of plaintiffs' suit is, to the extent of one-half, to avoid payment of the tax charged against their land, machinery, appurtenances and movables in the parish of St. Landry, based upon an assessment upon the same for the year 1895 of thirty thousand dollars. Relief is claimed upon the ground that while the property assessed is used in the manufacture of "cotton seed oil," it is also used in the manufacture of cotton seed meal, which they declare fo be a "fertilizer," and that the value of the "cotton seed meal" manufactured by means of the mill and its appurtenances is aboul equal to one-half of the value of the other products manu-

factured. It is contended that the property would have been entirely exempt from taxation under Art. 207 of the Constitution, as amended by the election in 1888, were it not for the fact that cotton seed meal (the fertilizer manufactured by them) was not the exclusive product manufactured.

The article of the Constitution relied upon declares that "there shall also be exempt from taxation and license for a period of twenty years from the adoption of the Constitution of 1879 the capital, machinery and other property employed in the manufacture of textile fabrics, leather shoes, harness, saddlery, hats, flour, machinery, agricultural implements, manufacture of ice, fertilizers and chemicals, etc., * * * provided that not less than five hands are employed in any one factory."

Resistance is made to the demand for a number of reasons.

It is contended, in the first place, that the production of "cotton seed meal" is simply one of the results of the employment of machinery in the production of "cotton seed oil." That this latter business, so far from having been looked upon with favor by the framers of the Constitution, was in a marked and emphasized manner discriminated against in *Art. 296* of that instrument, in having been therein taken out specially from the list of occupations exempted from the payment of a license tax and placed in respect to such a tax upon the same footing as manufacturers of distilled alcoholic or malt liquors, tobacco and cigars. It is urged that it is not to be readily supposed that encouragement is sought to be given under Art. 207 of the Constitution, as amended, to the production of "cotton seed meal," so long as the discrimination against the production of "cotton seed oil" remains in the organic law. That in view of this fact, we must apply with the utmost strictness the rule that claims for exemptions from taxation are sustainable only when accorded by law in the clearest language.

Defendants maintain further that, although cotton seed meal can be utilized for the purpose of a fertilizer, with good effect, it can not, in strictness, be deemed "a fertilizer." That the primary and exclusive object of its production was not for fertilizing purposes. That it is used as freely (if not more freely) for the purpose of food for animals as it is for the purposes of cultivation.

It is also contended that, while the process through which cotton seed oil is obtained may be *quoad* the oil a "manufacturing" pro-

cess, it is not one *quoad* the production of the " cotton seed meal"— that the latter article is simply the refuse of the first process and the latter no more to be deemed a process for the manufacture of meal than it is for the manufacture of hulls; the " hulls" and the " meal" being merely unavoidable, resulting incidents or accompaniments of the manufacture of oil—that being the main industry.

We are of the opinion that plaintiff's demand is not well founded.

The article on account of the production of which exemption is claimed is used as much for purposes other than that of a fertilizer as it is for that particular purpose.   This being so, the consideration and determination of a claim of exemption in any particular case would involve an investigation into and determination of the question as to what use the product of each particular mill was finally put to.   It was not intended that a mill should be granted exemption from taxation for the production of cotton-seed meal, which, in fact, should be used for food purposes, and not as a fertilizer, or contemplated that the assessor or tax collector shoulld be called upon in each case to go into an examination of the *pro rata* actually used for one purpose or the other.

In the case at bar we think it fairly appears that a large part of the product of the mill was used for purposes other than fertilizing.

We are of the opinion that the District Court erred in its judgment.

For the reasons herein assigned it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed; and it is now ordered, adjudged and decreed that plaintiff's demand be rejected, with costs in both courts.